UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KENNETH AMMONS,

                Plaintiff,

v.

SCOTT LIGHT, *et al.*,

                Defendants.

CASE NO. 3:19-cv-05028-RBL-JRC

REPORT AND RECOMMENDATION

NOTED FOR: March 13, 2020

The District Court has referred this 42 U.S.C. § 1983 civil rights action to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and local Magistrate Judge Rules MJR1, MJR3, and MJR4. This matter is before the Court on summary judgment motions filed by all defendants. *See* Dkts. 49, 57.

Plaintiff, who is incarcerated, alleges that medical providers and Department of Corrections ("DOC") staff refused to provide treatment for his chronic, worsening pain caused by a lower back condition and that such constituted deliberate indifference to his medical needs in violation of the Eighth Amendment. However, plaintiff has not come forward with facts to

1  dispute defendants' evidence in support of their summary judgment motions. Based on the
2  undisputed facts, the claims against each defendant either fail to establish that that defendant
3  acted with deliberate indifference to plaintiff's back condition or are barred by the statute of
4  limitations or the Eleventh Amendment. Therefore, summary judgment should be granted and
5  plaintiff's claims should be dismissed with prejudice.

## BACKGROUND

Plaintiff, who is incarcerated at Stafford Creek Corrections Center ("SCCC") and who proceeds *in forma pauperis* and *pro se* in this matter (Dkt. 5), brought this matter in January 2019. *See* Dkt. 1. In the operative complaint, plaintiff brings claims against the DOC; the DOC director of health services, Keith Parris; the DOC chief medical officer, G. Steven Hammond[1]; SCCC's superintendent, Ron Haynes; and DOC employees and officials J. Rogers, Kevin Bovenkamp, and Dale Caldwell. *See* Dkt. 8, at 2–6. Plaintiff also brings claims against a variety of medical providers: Scott Light, P.A.-C., "H. Wilson," R.N., Jonette Evert, "J. Nagala, PSR," Luciano Figueroa, Anand Suresh, Andrew Munson,"[2] Kerri McTarsney, "N." Springer, Shane L. Evans, and "Bradly Fehrenbach." Dkt. 8, at 2–6.

Against defendants other than DOC, plaintiff brings claims of deliberate indifference to his serious medical needs. *See* Dkt. 8, at 8. Plaintiff alleges that for the past decade, he has suffered from chronic, worsening lower back and leg pain that causes severe discomfort. Dkt. 8,

---

[1] Defendants G. Steven Hammond and Jonette Evert, M.A.C., returned the service waivers addressed to "Hammond Stere" and "Eust Mac." *See* Dkts. 14, 33. The undersigned refers to these defendants by the names that they gave in their service waivers.

[2] Plaintiff refers to defendant Munson as "A. Monson." The Court will use defendant Munson's name as given in his declaration. *See* Dkt. 50.

at 1, 6.  He claims that defendants knew of and disregarded his pain and that they "processed no paperwork to further a complete diagnosis and treatment plan"—even though the DOC has "many options for the treatment of chronic lower back pain[.]"  Dkt. 8, at 7.  Plaintiff's factual allegations of how particular defendants participated in the alleged constitutional violations are scant.  Plaintiff does allege that defendant Light ordered x-rays for plaintiff but failed to "address the initial reason for the X rays[.]"  Dkt. 8, at 2.  His allegations against the various medical providers and DOC officials and employees pertain to their roles in allegedly reviewing his x-rays and responding to his medical kites and grievances in which he complained of the lack of treatment for his pain.  *See* Dkt. 8.

Against DOC, plaintiff appears to bring a medical malpractice claim.  *See* Dkt. 8, at 8.  Plaintiff requests damages, costs, and injunctive relief requiring defendants to provide "necessary diagnostic services of a second opinion of outside health care professionals to come up with a treatment plan to adequately treat this serious medical condition[.]"  Dkt. 8, at 9.

Plaintiff's complaint was signed under penalty of perjury and is being considered as evidence.  *See* Dkt. 8, at 10.  Because plaintiff is *pro se*, the Court "must consider as evidence in his opposition to summary judgment all of [plaintiff's] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true and correct."  *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

In December 2019, defendants other than Fehrenbach and Suresh (collectively, "DOC defendants") moved for summary judgment dismissal of the claims against them.  *See* Dkt. 49.  Later that month, defendants Fehrenbach and Suresh also filed a joint summary judgment

1  motion. *See* Dkt. 57. With their motions, defendants filed two notices of dispositive motion.
2  *See* Dkts. 54, 61; *see also Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998). Each of these notices
3  informed plaintiff that "a motion for summary judgment," if granted, could result in dismissal of
4  "some or all of your claims" and his case being closed without a trial, as well as the timeline for
5  plaintiff to file a response to the summary judgment motions. *See* Dkt. 54, at 1–2; Dkt. 61, at 1–
6  2. Plaintiff has not responded to either summary judgment motion..

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate if a moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The materiality of a given fact is determined by the required elements of the substantive law under which the claims are brought. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Factual disputes that do not affect the outcome of the suit under the governing law will not be considered. *Id.*

Where there is a complete failure of proof concerning an essential element of the non-moving party's case on which the nonmoving party has the burden of proof, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson*, 477 U.S. at 254 ("the judge must view the evidence presented through the prism of the substantive evidentiary burden"). However, when presented with a motion for summary judgment, the court shall review the pleadings and evidence in the light most favorable to the nonmoving party, *Anderson*, 477 U.S. at 255 (citation omitted), and "a pro se complaint will be liberally construed. . . ." *Pena v. Gardner,* 976 F.2d

1 | 469, 471 (9th Cir. 1992) (*citing Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (other citation
2 | omitted).
3 |       Once the moving party has carried its burden under Fed. R. Civ. P. 56, the party opposing
4 | the motion must do more than simply show that there is some metaphysical doubt as to the
5 | material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). The
6 | opposing party cannot rest solely on his pleadings but must produce significant, probative
7 | evidence in the form of affidavits, and/or admissible discovery material that would allow a
8 | reasonable jury to find in his favor. *Id.* at n.11; *Anderson*, 477 U.S. at 249–50. However,
9 | weighing of evidence and drawing legitimate inferences from facts are jury functions, and not
10 | the function of the court. *See United Steel Workers of Am. v. Phelps Dodge Corps.*, 865 F.2d
11 | 1539, 1542 (9th Cir. 1989). And if the moving party has not met its burden on summary
12 | judgment, the Court will not grant the motion—even if there is no opposition to the motion. *See*
13 | *Henry v. Gill Inds.*, 983 F.2d 943 950 (9th Cir. 1993) ("Summary judgment may be resisted and
14 | must be denied on no other grounds than that the movant has failed to meet its burden of
15 | demonstrating the absence of triable issues.").
16 | **II. DOC Defendants' Summary Judgment Motion**
17 |     **A. Statute of Limitations: Claims against Defendants Munson and Figueroa**
18 |       Plaintiff alleges that defendants Munson and Figueroa were deliberately indifferent to
19 | him because they performed x-rays of him but took no other action to resolve his pain. *See* Dkt.
20 | 8, at 3–4. Defendants argue that the statute of limitations bars these claims. *See* Dkt. 49, at 11.
21 |       Under well-established Washington State and Ninth Circuit law, the statute of limitations
22 | in this matter under § 1983 is three years. *See Rose v. Rinaldi*, 654 F.2d 546, 547 (9th Cir.
23 | 1981). Although plaintiff does not specify when the alleged constitutional violations by
24 |

defendants Munson and Figueroa occurred, defendants provide an uncontroverted declaration from defendant Munson that his only involvement in plaintiff's care was in 2015, more than three years before plaintiff brought this action. *See* Dkt. 50, at 2. The x-ray report notes that defendant Figueroa referred the matter for imaging. *See* Dkt. 50-1, at 2. Plaintiff's medical records do not otherwise include any references to defendants Figueroa or Munson, related to plaintiff's back pain. Although defendant Munson later performed imaging of plaintiff's elbow, this imaging pertained to plaintiff's complaints of left elbow pain and is unrelated to the claimed constitutional violations in this matter. *See* Dkt. 51-1, at 45

Thus, there is no genuine issue of material fact based on the materials before the Court that plaintiff's claims that defendants Figueroa and Munson violated plaintiff's constitutional rights by being deliberately indifferent to his back pain rely on events that occurred more than three years before plaintiff brought this matter. As such, the statute of limitations bars the claims against defendants Figueroa and Munson, and these claims should be dismissed with prejudice.

### B. Deliberate Indifference: Remaining Claims against DOC Defendants

Among other arguments, defendants assert that the remaining claims against DOC defendants should be dismissed with prejudice because plaintiff "cannot show that any [d]efendant was deliberately indifferent to a serious medical need." Dkt. 49, at 15. The undersigned agrees, for the reasons set forth below.

#### 1. Legal Principles

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). "'[D]eliberate indifference to serious medical needs of prisoners' violates the [Eighth] Amendment because it constitutes the unnecessary and wanton

1  infliction of pain contrary to contemporary standards of decency." *Id.* at 32 (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

Deliberate indifference means that a defendant both "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "A difference of [medical] opinion does not amount to a deliberate indifference to . . . serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

**2. Defendant Light**

Plaintiff alleges that defendant Light ignored his serious medical needs because defendant Light ordered x-rays but failed to address the reason for the x-rays, presumably plaintiff's back pain. *See* Dkt. 8, at 2–3.

Defendants rely on the declaration of defendant Light, an SCCC physician's assistant who provided medical consultation and treatment for plaintiff, including seeing plaintiff "for his complaint of low back pain" on April 21, 2016. Dkt. 51, at 1–2. At that time, defendant Light referred plaintiff for physical therapy but noted "incremental improvement" based on decreasing left nerve symptoms. Dkt. 51, at 2. Defendant Light "asked [plaintiff] to return to see me if he was not improving or if his condition was worsening in any way." Dkt. 51, at 2.

Defendant Light next saw plaintiff on January 5, 2017, but plaintiff did not mention any back pain at the visit. Dkt. 51, at 3. On February 16, 2017, defendant Light again attended plaintiff, this time ordering an x-ray of plaintiff's left hip, which defendant Fehrenbach performed. Dkt. 51, at 3; Dkt. 51-1, at 26. The x-ray findings "were generally unrevealing[.]" Dkt. 51, at 3.

At subsequent visits in May, July, August, and October 2017 and January 2018, defendant Light recounts that plaintiff did not complain of back pain; even so, defendant Light examined plaintiff's back in July and was reassured that there were "no signs of disc herniation or motor sensory compromise." Dkt. 51, at 3–4. By February 2019, plaintiff had moved housing units, and defendant Light was no longer his primary care provider. Dkt. 51, at 5. According to defendant Light, the vast majority of plaintiff's complaints leading up to March 2019 "were for issues unrelated to any complaint of back pain." Dkt. 51, at 5.

Plaintiff's claim focuses on defendant Light allegedly not having taken action after reviewing plaintiff's x-rays. But defendant Light states that the x-ray findings were "generally unrevealing in that there was no fracture and no significant degenerative change on the left hip and minimal degeneration on the right hip." Dkt. 51, at 3. Even so, defendant Light examined plaintiff's back at a subsequent visit and documented reassuring signs, leading defendant Light to believe that plaintiff's back condition was improving. Thus, defendant Light has come forward with evidence that he did not "ignore" plaintiff's back after viewing the x-rays but exercised his judgment that nothing further needed to be done, particularly since plaintiff's back pain was at the time "not radiat[ing] past the low back at all"—representing improvement in his spinal condition. *See* Dkt. 51, at 3.

In short, defendants have come forward with evidence that plaintiff's claim about defendant Light's actions after viewing the x-ray amounts to a difference of medical opinion, which is not actionable under § 1983. Plaintiff's claims rely on no more than his own, unsupported assertion that defendant Light ignored his condition. *See* Dkt. 8, at 2–3. Therefore, there is no genuine issue of material fact, and summary judgment dismissal of the claims against defendant Light should be granted.

### 3. Defendants Wilson, Evert, and Nagala

Plaintiff claims that defendants Wilson, Evert, and Nagala "fail[ed] to acknowledge and advise proper authorities of plaintiff's condition." Dkt. 8, at 3. Plaintiff otherwise provides no factual allegations—and no evidence in response to the summary judgment motion—to support these claims. *See* Dkt. 8.

The DOC defendants rely on the declaration of defendant Parris—a health services manager at SCCC—who states that in May 2018, he investigated plaintiff's grievance alleging that he had contacted medical three times to be seen for pain. Dkt. 52, at 1. In March and April 2018, plaintiff sent three written messages ("kites") to health services regarding back pain and requesting to have his lower back examined, including providing an MRI or x-ray. Dkt. 52-1, at 2–4. Each time, either defendant Wilson, Evert, or Nagala responded by instructing plaintiff to sign up for unit sick call to have his concerns addressed. *See* Dkt. 52-1, at 1–4.

Defendant Wilson, a nurse, would also later examine plaintiff for pain in his left leg. Dkt. 51, at 6. At that time, plaintiff stated that he had ongoing leg pain but that nothing had been done about it. *See* Dkt. 51-1, at 51. Defendant Wilson spoke to plaintiff's work supervisor, who stated that plaintiff had good attendance at his job in the parcel shop despite sometimes complaining of back pain. Dkt. 51-1, at 51. Defendant Wilson therefore wrote that there was "nothing emergent or urgent today" and requested a follow-up appointment in eleven days. Dkt. 51-1, at 51.

Thus, defendants have come forward with undisputed evidence that neither Wilson, Evert, nor Nagala knew of and disregarded an excessive risk to plaintiff's safety. They each learned of plaintiff's complaint of pain and advised him of the proper way to obtain medical attention to resolve his complaints. Defendant Wilson then addressed plaintiff's subsequent

complaint of pain by scheduling a follow-up appointment for him.  A rational trier of fact could not find from these undisputed facts that these defendants acted with deliberate indifference.  Therefore, the claims against defendants Wilson, Evert, and Nagala should be dismissed with prejudice for failure to provide any evidence that these defendants were deliberately indifferent to plaintiff's medical needs.

### 4. Defendants Springer and McTarsney

Plaintiff claims that defendants Springer and McTarsney violated his constitutional rights because they "failed to see that plaintiff's health request kit[e] 'is' a proper notification to medical and that plaintiff did not sign another form to be seen" "show[ing] that the pain has clouded plaintiff's ability to jump through other forms of notification." Dkt. 8, at 4.

Defendant McTarsney—the SCCC grievance coordinator—explains that she reviewed plaintiff's initial grievance, including interviewing plaintiff and assigning defendant Parris to investigate the claim, after plaintiff grieved the failure to "do[] anything" following his three kites to medical staff in March and April 2018. Dkt. 53, at 2. Defendants McTarsney and Parris state that beginning on May 7, 2018—after plaintiff's three kites to medical—the SCCC process for signing up for a sick call changed. Dkts. 53, at 2; 52, at 2. Instead of signing themselves up, prisoners had to send a kite requesting to be signed up. Dkts. 53, at 2; 52, at 2. Defendant Niki Springer—who was filling in for defendant McTarsney—signed a level 1 grievance response that informed plaintiff of the change and that he could now send a kite requesting to be signed up for sick call. Dkt. 53, at 2.

Plaintiff's claim against McTarsney and Springer is that they should have treated his three prior medical kites as a request for a sick call, instead of requiring him to send a new kite after the policy changed. *See* Dkt. 8, at 4.  But plaintiff comes forward with no evidence from

REPORT AND RECOMMENDATION - 10

1  which a reasonable trier of fact could find that doing so amounted to deliberate indifference to
2  plaintiff's serious medical needs.  In his three kites, plaintiff requested that something be done
3  about his "pain" and requested x-rays or an MRI.  *See* Dkt. 52-1, at 2–4.  Similarly, in his
4  grievance, plaintiff wrote that medical had not "do[ne] anything" about his pain and suggested x-
5  rays and an MRI.  *See* Dkt. 53-1, at 2.  There is nothing in these complaints from which a
6  reasonable trier of fact would find that defendants McTarsney and Springer would have known
7  that plaintiff could not submit another kite to medical staff after the policy change.  *See*
8  *Anderson*, 477 U.S. at 248 (stating that a dispute as to a material fact is "genuine" if there is
9  sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party).

10       Thus there is no genuine issue of material fact regarding whether defendants McTarsney
11  and Springer were deliberately indifferent to plaintiff's serious medical needs, and the claims
12  against them should be dismissed with prejudice.  *See Taylor v. List*, 880 F.2d 1040, 1045 (9th
13  Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory
14  allegations unsupported by factual data.").

### 5. Defendant Parris

16       Plaintiff alleges that defendant Parris "reviewed plaintiff's grievance Level 1 and said he
17  would put plaintiff on the call out for chronic low back pain" but never did so, thus denying
18  treatment.  *See* Dkt. 8, at 4–5.

19       Defendant Parris states that he investigated plaintiff's grievance, including reviewing
20  plaintiff's medical file and reading his kites to medical staff.  *See* Dkt. 52, at 2.  Although
21  defendant Parris does not say that he told plaintiff anything, the undersigned takes as true
22  plaintiff's allegation under penalty of perjury in his complaint that defendant Parris said that he
23  would place plaintiff on sick call.  *See* Dkt. 8, at 4–5; *Jones*, 393 F.3d at 923.

24

Nevertheless, even taking the facts in the light most favorable to plaintiff, a rational trier of fact could not find that defendant Parris was deliberately indifferent to plaintiff. There is no genuine dispute of material fact that Parris was familiar with plaintiff's medical records through May 2018—records that included scant references to back pain and in which defendant Light had recorded that plaintiff's symptoms showed improvement in his condition, that x-ray findings and examination did not reveal any significant issues, and that in numerous medical appointments, plaintiff's complaints about other conditions had eclipsed his scattered complaints about back pain. *See* Dkt. 51, at 2–3.

Thus, even if defendant Parris told plaintiff that Parris would sign him up for a sick call for his back pain and failed to do so, there is no evidence that Parris did so with an awareness that failing to sign plaintiff up for a sick call would result in an excessive risk to his safety. *See Farmer*, 511 U.S. at 837. Because even viewing the evidence in the light most favorable to plaintiff, a trier of fact would not find that defendant Parris was deliberately indifferent to plaintiff, the claims against defendant Parris should be dismissed with prejudice.

### 6. Defendants Evans and Haynes

Plaintiff alleges that defendant Evans "did call plaintiff in from the waiting room for triage, but failed to call him back from the waiting room to see the medical provider as he said he would." Dkt. 8, at 5. It is unclear from plaintiff's complaint the context in which defendant Evans "failed to call [plaintiff] back." Regarding defendant Haynes, plaintiff alleges that Haynes "was advised of plaintiff's intractable pain through the grievance process and said it would receive follow up attention," which did not happen. Dkt. 8, at 5.

According to defendant McTarsney, plaintiff appealed the level 1 grievance response, again stating that he had written medical three times and that they were not doing anything for

1   his pain. *See* Dkt. 53, at 2. Defendant Evans—another health services manager—investigated
2   plaintiff's grievance at this level and responded that plaintiff had not brought up any back issues
3   at his January 2018 medical appointment. Dkt. 53, at 2. Thus the level 2 response, which
4   defendant Haynes signed, requested that plaintiff kite health services in order to schedule an
5   appointment. Dkt. 53, at 2.

6   Regarding defendant Evans, although the circumstances under which he allegedly saw
7   plaintiff but failed to call him back from a waiting room are unclear, there is no genuine dispute
8   of material fact that defendant Evans investigated plaintiff's allegations, including reviewing
9   plaintiff's records. In May 2018, at the time of the level 2 response and defendant Evan's
10  investigation, plaintiff's medical records continued to generally lack complaint of back pain and
11  reflected defendant Light's assessment that the back condition was improving and signs were
12  reassuring. *See* Dkt. 51, at 3–5. Thus, failure to ensure that plaintiff was called back to a
13  medical appointment was not deliberate indifference where the undisputed facts establish a lack
14  of complaint of back pain and where plaintiff had repeatedly been advised of how he could
15  schedule immediate medical attention.

16  Similarly, although plaintiff makes a speculative assertion that defendant Haynes "was
17  advised of plaintiff's intractable pain through the grievance process and said it would receive
18  follow up attention from the medical provider," the undisputed facts regarding Haynes'
19  involvement do not amount to deliberate indifference, either. Rather, defendant Haynes was
20  aware that plaintiff had been seen by defendant Light, that he had only complained of symptoms
21  in his arm, and that plaintiff had failed to "kite" another request to be seen, despite being directed
22  to do so. *See* Dkt. 53-1, at 5. A reasonable trier of fact could not conclude from these facts, even

viewed in the light most favorable to plaintiff, that defendant Haynes was deliberately indifferent to plaintiff.  *See Anderson*, 477 U.S. at 248.

Therefore, the claims against defendants Haynes and Evans should be dismissed with prejudice because plaintiff has come forward with no evidence of deliberate indifference.

### 7.  Defendants Rogers, Bovenkamp, and Caldwell

Regarding defendants Rogers, Bovenkamp, and Caldwell, plaintiff alleges that these defendants should have followed up to see if plaintiff "was seen by the medical provider" (as promised in his level 2 grievance) but failed to do so.  *See* Dkt. 8, at 5–6.  Plaintiff alleges that defendant Caldwell "said he would follow up on the grievance response to make sure it would get done[.]"  *See* Dkt. 8, at 6.

Defendants provide plaintiff's level 2 appeal, which repeated his claim that he had written "medical" three times but had not been treated for his pain.  *See* Dkt. 8, at 3.  Defendant Caldwell, the grievance program manager, signed two notifications to plaintiff that the time in which to respond to his appeal had been extended.  *See* Dkt. 53-1, at 7–8.

In September 2018, the level 3 grievance response documented that defendant Rogers, a DOC clinical nurse specialist, had reviewed plaintiff's medical files and "noted that the majority of [plaintiff's] medical visits had been for issues with his left elbow and arm[.]"  Dkt. 53, at 3l; *see* Dkt. 53-1, at 9.  Further, plaintiff "had not seen medical since January 2018, and [he] simply needed to send a kite to be seen by medical, given the change in sick call sign-ups. . . ."  Dkt. 53, at 3.  Defendant Bovenkamp, the DOC's Assistant Secretary, signed the level 3 grievance response.  *See* Dkt. 53-1, at 9.

Even taking as true plaintiff's allegation in his complaint that defendant Caldwell "said he would follow up," plaintiff has not provided any facts that, viewed in the light most favorable

to him, could support a finding of deliberate indifference.  Rather, the evidence is undisputed that these defendants knew plaintiff's medical history through September 2018, including, as noted above, that he had not seen a provider since January and that he had not complained of back pain at that visit.  *See* Dkt. 51, at 5.  Moreover, although plaintiff had repeatedly grieved the failure to respond to his three prior kites, he had not filed another kite, as directed by staff in order to be seen.  Based on plaintiff's scarce complaints of back pain in the record during this period and that an option for plaintiff to obtain immediate medical attention was readily apparent, the undisputed facts do not amount to deliberate indifference to plaintiff's medical needs by these defendants on the basis that they did not personally ensure that plaintiff was seen by a medical provider.  The claims against defendants Rogers, Bovenkamp, and Caldwell should be dismissed with prejudice.

### 8. Defendant Hammond

Plaintiff alleges that defendant Hammond is liable because in his role as DOC chief medical officer, "he has the duty to [e]nsure that DOC provides constitutionally adequate health care to prisoners in its custody." Dkt. 8, at 2.  Defendants argue that as a matter of law, summary judgment should be granted in their favor because plaintiff has not alleged personal participation by this defendant.  *See* Dkt. 49, at 17.

The undersigned agrees with defendants.  Supervisory officials "may not be held liable for the unconstitutional conduct of their subordinates under a theory of" vicarious liability.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  Plaintiff's claim against defendant Hammond is based on no more than supervisory liability for his subordinates' actions and therefore fails as a matter of law.  The claim should be dismissed with prejudice.

**9. DOC**

Plaintiff alleges that the DOC is liable for "violation of duty" and "the Hippocratic Oath" because it violated a "non-delegable duty to keep prisoners in health and safety by denying [plaintiff] necessary care for his serious medical condition and by denying him a reasonable opportunity for second opinion, and treatment of his chronic low back pain." Dkt. 8, at 9.

Whether sued for damages or injunctive relief, state agencies such as the DOC have immunity from suit in federal court under the Eleventh Amendment. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1040 (9th Cir. 2003). Therefore, as a matter of law, plaintiff's claim against the DOC fails and should be dismissed with prejudice.

### III. Non-DOC Defendants' Summary Judgment Motion

Defendants Suresh and Fehrenbach separately request summary judgment dismissal of plaintiff's claims against them, arguing that plaintiff has provided no evidence to support that either defendant was deliberately indifferent to plaintiff's serious medical needs. *See* Dkt. 57. The District Court should agree for the reasons set forth below.

#### A. Statute of Limitations—Defendant Suresh

Plaintiff alleges that defendant Suresh "gave X-rays but failed to address the pain or forward the information to someone who could help with the pain." Dkt. 8, at 4.

Defendant Suresh states that he is a licensed radiologist who works for a private company that interpreted imaging from DOC facilities. *See* Dkt. 59, at 1–2. He interpreted plaintiff's imaging studies and reported to the referring provider—so that the provider could determine whether additional treatment was necessary or indicated. Dkt. 59, at 2. In 2015, defendant Suresh completed reports regarding plaintiff's' imaging studies and transferred them back to DOC. *See* Dkt. 59, at 2. He had no other involvement in plaintiff's case.

1    Because it is undisputed that defendant Suresh's involvement in this matter happened
2 more than three years before the case was filed, the statute of limitations bars plaintiff's claim
3 against defendant Suresh. Plaintiff's claims against defendant Suresh should therefore be
4 dismissed with prejudice.

**B. Deliberate Indifference—Defendant Fehrenbach**

6    Plaintiff alleges that defendant Fehrenbach "did perform X-rays but failed to forward
7 plaintiff on to follow up care for chronic low back pain." Dkt. 8, at 6.

8    Defendant Fehrenbach states that he is a radiologist who does not provide direct patient
9 care or order tests or treatment. Dkt. 60, at 1. Instead, he interprets imaging studies transmitted
10 to a private company by DOC. Dkt. 60, at 1. He states that his sole role in this matter was
11 interpreting radiographs of plaintiff's pelvis and hip in February 2017, then transmitting his
12 report back to DOC. *See* Dkt. 60, at 2. Defendant Fehrenbach reviewed the radiographs related
13 to left hip pain—he did not review for back pain or receive any images to interpret related to
14 plaintiff's back pain. *See* Dkt. 60, at 2; *see also* Dkt. 51, at 3; Dkt. 51-1, at 26.

15    Plaintiff has provided no evidence that defendant Fehrenbach was aware of plaintiff's
16 complaints of low back pain. Therefore, defendant Fehrenbach's account is undisputed.
17 Summary judgment dismissal of the claims against defendant Fehrenbach should be granted on
18 the basis that Fehrenbach was not deliberately indifferent to plaintiff's complaints of low back
19 pain.

**IV.  *In Forma Pauperis* on Appeal**

21    The Court recommends revoking plaintiff's *in forma pauperis* status for purposes of
22 appeal. IFP status on appeal shall not be granted if the district court certifies "before or after the
23 notice of appeal is filed" "that the appeal is not taken in good faith[.]" Fed. R. App. P.

24

24(a)(3)(A); *see also* 28 U.S.C. § 1915(a)(3). A plaintiff satisfies the "good faith" requirement if he seeks review of an issue that is "not frivolous," and an appeal is frivolous where it lacks any arguable basis in law or fact. *Gardner v. Pogue*, 558 F.2d 548, 551 (9th Cir. 1977); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Any appeal of this matter would lack an arguable basis in law, as plaintiff has failed to create any genuine dispute of material fact and has not responded to either summary judgment motion.

## CONCLUSION

The undersigned recommends that defendants' motions for summary judgment (Dkts. 49, 57) be granted, that plaintiff's claims be dismissed with prejudice, and that plaintiff's *in forma pauperis* status be revoked for any appeal.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **March 13, 2020**, as noted in the caption.

Dated this 27th day of February, 2020.

J. Richard Creatura
United States Magistrate Judge